Caeuthers, J.,
delivered the opinion of the court.
This is a contest between the complainant as widow and devisee of Jo. C. Gee, and the defendant, as widow and devisee of Sami. M. Gee, in relation to the extent of their respective interests ' in a tract of land of 179 acres on which the former resides.
The land was purchased by the two brothers, jointly, of G. W. Sevier, 1st January, 1838, at $7,200, of which $3000 were paid in cash, by Jo. C. Gee, as it is stated, and joint notes given for the balance, upon time, and a deed in fee made to them, and the consideration unpaid secured by a mortgage.
The brothers and their families were living together *400 on the land at the death of Sami. M., in 1840, when he died of consumption, after making his will, in which he appointed his brother executor; who obtained probate, and was qualified, and acted as executor of the same. The will provides in relation to the land, after giving his slaves to his wife, Hannah M., “my interest in the land, with my brother, Jo. 0. Gee, he is to have five years to pay all the'debts that him and me are bound in, and at the expiration of five years, from 1840, at which time he is to deduct what money he pays out from the land, and then make a division with my wife Hannah and himself, as she and him may agree, and if they do not agree, to have it valued by three disinterested men.” The defendant very soon went back to her friends, in Virginia. Jos. O. Gee devised the land to his wife, the complainant, and died, and she qualified as his executrix.
Soon after the expiration of the five years, from 1840, the defendant gave a power of attorney to a man by the name of Pannell, to make a final settlement with Jos. O. Gee, in relation to his administration, including the matter of the land.. The said attorney went into a settlement with Jos. O. Gee, which resulted in an indebtedness on the part of the latter, to the said Hannah, of $400, of which, $100 was paid in cash, and the other, $300, closed* by note, which the said attorney was to collect for the maker out of some claim or legacy he had in Virginia, and hand over the money to the defendant, upon the execution by her of a deed for her interest in the land: He executed his own deed as attorney in fact, but the same was not registered, or considered binding, and seems only to *401 have been intended to he held until that of Hannah could he procured and forwarded. She refused to give a deed, and the $300 were not. paid.
vThis hill was filed hy the complainant, as executrix and devisee, to enforce the settlement of 1845, and divest the title of defendant, or to “remove the cloud” from her own. A cross hill is filed hy the defendant for the assertion of her rights.
1. Is the settlement made by her attorney in fact, binding upon the defendant? The only evidence we have in regard to it, is a paper filed as an exhibit to the hill, said to he in the hand writing of Pannell, consisting of loose memoranda and figures, entirely unintelligible, and without certificate or signature, and the deposition of Pannell himself; ho says that he entered down items and amounts as they were given out to him hy Jos. C. Gee, without much confidence, or any examination, and received the amount said by Gee to he due, upon the express condition that it should not ho final or binding, unless it was approved and ratified hy his principal, and that she repudiated it as soon as he returned to Virginia, and apprised her of it.
The amount thus agreed to be paid over, seems to he the price of a negro slave of the said Samuel M., which was sold, and the proceeds applied to the payment for the land. It was, and is now insisted, that this is all that was ever paid hy him, upon the land, and that there was nothing due- to his estate from the executors, and that the settlement was in all respects, full and correct. But whether this he so or not, there certainly eannot he a moment’s hesitation, in holding, that the pretended settlement does not present the least *402 difficulty in the way of the assertion by the .defendant,. of whatever right she may have under her husband’s Will.
The • only proof in relation to it, shows that it was all on. one side, in the absence of that ’full showing and explanation, which is required of a trustee, and w,as expressly conditional, according- to the. evidence of the only witness who was present when it was made. Sor that must -be regarded in the consideration of the case, as if it never had been, except so far as it may tend to excite suspicion, and ■ demand a more vigilant investigation into the accounts of the executor and surviving. partner, Jos. 0. Gee, so far as that can now be done.
2. It is contended that if the settlement be disregarded, that the result must be the same, as to the land, because, if the joint purchasers paid unequal amounts for the land, that there would be a resulting, trust in favor of. each, to the extent of his payment; and as Sami. M. only paid $400, and Jos. 0. Gee the entire consideration besides, their interest in the land would be in the same proportion, and not joint and equal.
We cannot recognize- the correctness of this position,, but hold it to be erroneous. The doctrine of resulting trusts does’ not apply at all to such a ease as this.
Here the purchase, the deed in fee from Sevier, the notes for the consideration, th.e mortgage to secure them, and the possession, were all joint.' In such case, the parties are equal joint owners, without regard to the fact, whether the one or the other paid more or less of the price, and are equally entitled to any advantages *403 which may result from the purchase, in the enhancement of the value of the land, or otherwise.
It is true, in the adjustment of accounts between themselves, the matter must be equalized; and the land, with the proceeds, if sold, would be held hound by a court of equity for the excess paid by either, abdve his one half of the consideration.
This is not a lien or a mortgage, but a principle-of equity, producing the same result in the given case.
• To create a lien or mortgage, would require an express contract or stipulation between the joint purchasers. The rules laid down in 2 Sugden on Vendors, 387, § 16, 7 American, from the 11 London edition, as thus explained, is the correct one.
Resulting trusts can only arise upon the state of facts existing at the time of the purchase, and not afterwards. Where the purchase money is furnished by one before^, or at the time of the conveyance, which is made to another, the ownership is by resulting trust in him who-furnished the money paid, and so if he pay, or own' part of'the money so applied, he has a trust to that extent. But not so, if he pay the whole or part of the consideration, after the purchase, upon an agreement made afterwards — this would raise no trust. Chancellor Kent, in Batsford vs. Burr, 2 John. ch. 405, says: “the trust must have been co-eval with the deeds, or it cannot . exist at all.” It must result from the original transaction at the time it takes place, and “can-hot be mingled or confounded with any subsequent dealings whatever.” 3 Page, 380. It is true, as argued, that in White & Tudor’s L. Cases in Eq., 178, several cases are referred to, as sustaining the position, that *404 where “ a joint deed is made to several, who pay unequally, a trust in the land results to each, pxo tanto, of the amount paid by each; and where an executory contract of a joint purchase was entered into, and separate notes executed to the vendor for the amount to be paid by each,” an equitable trust arises in favor of each, to the extent of the amount so paid, or secured to be paid by them respectively. But, it will be observed, that all this must occur at the time of the purchase.
The money must be then paid, or if not, the notes must be separately executed. This position then, is not in conflict with the general doctrine first stated, which has been so uniformly sustained by the authorities on both sides of the Atlantic.
We are not inclined to go beyond “what is written” in favor of resulting trusts; they are in conflict with the sound policy upon which the statute of frauds and the registration acts are founded. They are created by parol evidence; rise up in the face of written and even registered titles, and prevail over them. Jos. 0. Gee and those claiming under him, will not be permitted, after recognizing the rights of his brother by swearing to execute, and perhaps writing the will, to repudiate the trusts imposed upon and assumed by him. The chancellor acted upon the principles set forth in this opinion, and ordered an account of the payments made by each for the land, of the rents and profits of the land since the death of Sami. M. Gee, &c. His decree is in all respects correct, and we affirm it, and remand the cause.